COUNTY OF DANE          )
                                         ) ss

STATE OF WISCONSIN      )

## AFFIDAVIT

I, Taylor Hughes, first being duly sworn under oath, hereby depose and state as follows:

1.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Stanley POPHAL (POPHAL) has committed a violation of Title 18 United States Code § 1343 (Wire Fraud) and Title 18 United States Code § 1957 (Money Laundering).

2.      I am a Special Agent with the United States Treasury Department, Internal Revenue Service – Criminal Investigations (IRS-CI) and have been since September of 2020. I am employed by Internal Revenue Service, Criminal Investigation and am presently assigned to Madison, Wisconsin as part of the Chicago Field Office.  I earned a Bachelor of Arts degree in Accounting from Rasmussen College in January 2019 and earned my Master of Accounting and Financial Management from DeVry University in February 2021. In September 2021, I graduated from the Special Agent Investigative Techniques program at the National Criminal Investigation Training Academy.

3.      During the course of my employment, I have received specialized training in conducting criminal investigations, and my responsibilities include conducting criminal investigations of alleged criminal violations of United States Code Title 26, Title 18, and Title 31.  I have analyzed the financial records of individuals and businesses and have conducted financial investigations.  I am a law enforcement officer authorized to make an application for a criminal complaint.

4.    The facts set forth in this affidavit are based on my personal knowledge, Internal Revenue Service records, interviews of witnesses, review of financial records, review of subpoena information, internet research, and observations by other law enforcement officers who I know to be truthful and reliable. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint, it does not set forth each and every fact that I or others have learned during the course of the investigation.

5.    The Federal Bureau of Investigation along with the Internal Revenue Service have been involved in a financial investigation into POPHAL, a resident of Wausau, Wisconsin (WI).  Agents have reviewed financial records indicating POPHAL received approximately $15,888,560 from at least 128 individuals between May 15, 2019, and March 31, 2025. Twenty-one of the individuals (the investors) were recently interviewed as part of this investigation and confirmed that the money they sent to POPHAL was to be used for various investments and/or business purposes. POPHAL told some investors that he was licensed investor and a fiduciary. POPHAL represented himself to the investors as highly successful and wealthy. POPHAL offered alternate investment opportunities called promissory notes. Online research indicates that a promissory note is a payable, legal instrument, in which one party promises to pay a determinate sum of money to the other, subject to the terms and conditions within the document. POPHAL "guaranteed" rates of return to the investors.  POPHAL often told investors that God had "blessed" him with "good fortune" and helping people make money was POPHAL's way to "pay it forward."

2

6.     The investigation has revealed that POPHAL has used several businesses registered in the Wisconsin to further his fraud scheme, including BRIGHT WITH SILVER, INC. (formerly DBA Fromm Bros., Inc.), and BRIGHT SILVER LLC.   On May 28, 2024, I conducted online searches and discovered no record of POPHAL and/or his known businesses being registered with the Securities and Exchange Commission (SEC), and/or Financial Industry Regulatory Authority (FINRA).

7.     The government's investigation has revealed that part of POPHAL's appeal to the investors was his verbal proclamations of wealth, along with a physical display of wealth, which included his vast snowmobile collection.  During interviews with agents, some investors recalled POPHAL bragging about his business successes in the past that made him a millionaire, such as the sale of Celcom cellphone companies, the creation and sale of car wash dryers, the purchase and sale of real estate, ownership of ginseng farms, and ownership of a family fox farm. The investors also recalled that POPHAL was wealthy enough to purchase hundreds of collectible racing snowmobiles, racing motocross bikes, and racecars. POPHAL expressed to some investors that he was a multi-millionaire and expressed to others that he was a billionaire. POPHAL also recorded a testimonial that he posted online, discussing his history of financial wealth.

8.     Based on interviews conducted during this investigation, I know that POPHAL told many investors that he was related to a very wealthy and well-known family in Marathon County, WI. This well-known family had gained a large amount of wealth through ginseng farming and fox fur farming. Based on my investigation, I learned that POPHAL has no historical or family relationship to the well-known family, nor to the family's ginseng and fox fur farming business.

9.      Based on a review of POPHAL's financial records, I know that POPHAL did not invest, nor spend for business purposes, a vast majority of the monies obtained from the investors in this case. Instead of investing the funds, POPHAL, used the funds to live an extravagant lifestyle and furthered his fraud scheme by providing many investors with lulling payments. Based on my review of known bank accounts, I also know that POPHAL is not a billionaire, nor is he a millionaire, and that he has no other apparent source of income besides what he is given from investors.  On June 5, 2025, I searched the Wisconsin Department of Workforce Development's (DWD) database for POPHAL's employment records.  DWD records show that POPHAL has no employment history since 2010.

10.      On May 13, 2025, I interviewed Victim-1, a resident of the Eastern District of Wisconsin.  Victim-1 met POPHAL through a mutual friend.  POPHAL told Victim-1 about his wealth and showed Victim-1 pictures of POPHAL's boats and snowmobiles.

11.      POPHAL approached Victim-1 about investing in promissory notes. POPHAL told Victim-1 that money used to purchase short-term promissory notes was used to purchase commercial properties and office building and flip them into residential apartments.

12.      In February of 2025, Victim-1 agreed to purchase a $50,000 short-term promissory note from POPHAL.  POPHAL guaranteed Victim-1 a 30-40% interest rate on the promissory note.  On February 25, 2025, Victim-1's sent a $50,000 wire transfer from Associated Bank to POPHAL business account (account number XX1248) at CoVantage Credit Union.

4

13.     I analyzed POPHAL's business account that Victim-1's money was deposited into and determined that none of Victim-1's money went toward the purchase of real estate. Rather, bank records show that POPHAL spent the $50,000 on personal expenses, including a $35,000 payment to a contractor for an expense related to his business, that settled in the POPHAL's business account (account number XX1248) on February 28, 2025, in violation of 18 U.S.C. Section 1957.

14.     Based on my training and experience, I know that Associated Bank processes its wire transfers through the Federal Reserve Bank.  The wire transfer on February 25, 2025, would have caused an interstate wire to be sent from Wisconsin to a Federal Reserve Bank outside of Wisconsin.


_____/s/_____\
Taylor Hughes
IRS-CI


Sworn to me telephonically this _13th_ day of __June 2025__.


_____\
HONORABLE ANITA MARIE BOOR
United States Magistrate Judge